## DEMORY BROTHERS, INC. ET AL. *v.* BOARD OF PUBLIC WORKS OF MARYLAND ET AL.

[No. 41, September Term, 1974.]

*Decided December 18, 1974.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE and O'DONNELL, JJ., and EUGENE MACKALL CHILDS, Associate Judge of the Fifth Judicial Circuit and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*Herman M. Braude,* with whom were *Gary L. Brooks* and *Sadur, Pelland, Braude & Caplan, Chartered* on the brief, for appellants.

*David C. Hjortsberg, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellees.

SWEENEY, J., delivered the opinion of the Court.

In this case we are asked to decide whether the provisions of the "Prevailing Wage Law" are applicable to a public school construction contract in Prince George's County.

The "Prevailing Wage Law" was adopted by the General Assembly by Chapter 558, Laws of Maryland, 1969, and became effective on July 1, 1970. The act requires every public body authorized to contract for public works to request the Commissioner of Labor and Industry to determine the prevailing rates of wages and fringe benefits for workmen in the locality in which the work is to be

performed, and the act further makes it mandatory upon the contractor to whom the contract is awarded and all sub-contractors under him to pay the specified rates to all workmen and apprentices employed by them in the execution of the contract.

The "Prevailing Wage Law" has been amended twice.[1] As originally enacted, the law specified that its provisions need not be applicable to construction projects entered into by State agencies funded primarily from sources other than the State, nor to construction contracts entered into by a county or municipal corporation, or a department, officer, board, commissioner, or agency thereof. By Chapter 220 of the Laws of Maryland, 1971, however, this portion of the law was amended, and it now provides, in pertinent part (Annotated Code of Maryland, Article 100, Section 96):

"(b) *'Construction'* includes all construction, reconstruction, improvement, enlargement, painting and decorating, alteration, maintenance or repair.

"(c) *'Public Works'* includes all buildings, bridges, roads, streets, alleys, ditches, sewage disposal plants, waterworks, and all other structures or works, constructed for public use or benefit or paid for wholly or in part out of public funds, except work done by any public utility company pursuant to order of the Public Service Commission or other public authority, whether or not done under public supervision or direction or paid for wholly or in part out of public funds, unless let to contract provided, however, that for

---

1. Laws of 1970, Chapters 263 & 293, both effective July 1, 1970, and Laws of 1971, Chapter 220, effective July 1, 1971. The latter amendment rewrote subsection (d). That subsection formerly provided:

"(d) *'Public body'* means the State or any department, officer, board, commission, or agency of the State, but this term shall not mean any State agency funded primarily from sources other than the State, nor shall it mean any county or municipal corporation, or any department, officer, board, commission or agency thereof."

the purposes of this subtitle contracts of less than $500,000 shall be excluded.

"(d) (1) *'Public body' means the State or any department, officer, board, commission, agency or instrumentality of the State, and shall include any other agency, political subdivision, corporation, person or entity of whatever nature when State public funds are the only funds used for the construction of a particular public works,* but, except when made applicable pursuant to the provisions of paragraph (2) of this subsection, this term shall not mean any State agency or instrumentality funded wholly from sources other than the State, nor shall it mean any county or municipal corporation, or any department, officer, board, commission, or agency thereof, when funds other than State funds are used either in whole or in part for the construction of public works.

(2) The governing body of any political subdivision of this State may provide by resolution or ordinance that the political subdivision shall be covered by this subtitle and included within the scope of its provisions and any such political subdivision shall constitute a 'public body' within the meaning of this subtitle when the commissioner is notified in writing by the governing body that such action has been taken."

(Emphasis supplied.)

Effective July 1, 1971 the State of Maryland undertook to pay the costs of all public school construction projects approved by the Board of Public Works. Chapter 624 of the Laws of Maryland, 1971. That act, and rules and regulations subsequently adopted by the Board of Public Works pursuant to the act, established procedures for the review and approval of school construction projects submitted by the boards of education of the counties and Baltimore City. On July 12, 1972, the Board of Education of Prince George's County issued invitations for bids on the construction of an addition and alterations to the Eugene Burroughs Junior

High School. Initially those invitations were issued without reference to the "Prevailing Wage Law". Approximately one month later, however, the Board issued an addendum to the invitation, requesting each bidder to submit two separate bids; one to be applicable if "prevailing wage" rates were required to be paid on the project, and the other bid to be applicable if those rates were not required to be paid. Demory Brothers, Inc., (Demory) an appellant herein, submitted the low non-prevailing wage bid, in the amount of $1,090,500.00. Demory's alternate bid, using the "prevailing wage" rate, was $1,155,930.00. This was not the low bid submitted under the "prevailing wage" alternative, as a competing firm, Gardiner and Gardiner, Inc. (Gardiner), submitted the low bid in that category in the amount of $1,103,000.00. If the "Prevailing Wage Law" was not applicable to the project, therefore, Demory was the successful bidder; if, however, the provisions of the "Prevailing Wage Law" were applicable, Gardiner was the successful bidder.

The Prince George's County Board of Education requested the Interagency Committee for State Public School Construction[2] to approve the award of the contract to Demory. That request was refused, whereupon the Board of Education requested approval of the Gardiner bid, which approval was granted. The contract with Gardiner was subsequently approved by the Board of Public Works.

The action of the Interagency Committee in rejecting the Demory bid and approving the Gardiner bid was tantamount to a holding by the Committee that the "Prevailing Wage Law" was applicable to projects built under the State School Construction Program, by virtue of the provisions of Section 96 (d) (1) of Article 100.

After the award of the contract to Gardiner, Demory

---

2. The Interagency Committee for State Public School Construction was created by Regulation 1 of the Rules and Regulations for the Administration of the School Construction Program adopted by the Board of Public Works June 29, 1971. The Committee consists of the Secretary of State Planning, the Secretary of General Services, and the State Superintendent of Schools, or their respective designees. The State Superintendent of Schools or his designee is the chairman of the committee.

instituted suit in the Circuit Court for Prince George's County, asking that the contract be declared null and void and that the Board of Education be ordered to award the contract to Demory. The Bill of Complaint alleged that the "Prevailing Wage Law" was not applicable to the State School Construction Program in general, or to this contract in particular. Joining Demory as plaintiffs were the Metropolitan Washington Chapter of Associated Builders and Contractors, Inc., the Associated Builders and Contractors of Maryland, Inc., and Charles W. Demory, Jr., individually. Named as defendants were the Board of Public Works for the State of Maryland, the Board of Education of Prince George's County, and Carl W. Hassel, in his official capacity as Superintendent of Schools of Prince George's County.

The case was tried before Chief Judge Ralph W. Powers in the Circuit Court for Prince George's County on a stipulation of facts, and Judge Powers entered a decree in which he denied the relief requested by Demory. Demory then appealed to the Court of Special Appeals, which affirmed the judgment. *Demory Brothers v. Bd. of Pub. Works*, 20 Md. App. 467, 316 A. 2d 529 (1974). Because the question is one of substantial interest throughout the State, we granted certiorari to review that decision.

The attack on the rejection of the Demory bid is two-pronged. The Appellants first argue that the provisions of the "Prevailing Wage Law" are not applicable to the public school construction program in general. Secondly, they argue that even if the "Prevailing Wage Law" is in any way applicable to public school construction programs, it is not applicable to this particular contract, since, in their view, State public funds were not the *only* funds used for the construction of this school.

It is clear and unmistakable that the General Assembly intended that the Public School Construction Program should be administered in conjunction with the "Prevailing Wage Law". In reaching this determination, we rely on two primary factors. The first is that on October 17, 1972, the Attorney General rendered an opinion to the Executive

Director of the Public School Construction Program, holding that the "Prevailing Wage Law" was applicable to a public school construction project. At the next following session of the General Assembly, legislation was introduced which would have specifically excluded all contracts for public school construction, additions, or alterations from the provisions of the "Prevailing Wage Law" (Senate Bill 369, 1973). This Bill failed, not once, but twice. It failed of passage initially by a vote of 22 to 18, with three Senators abstaining. On reconsideration, it failed by a tie vote of 21 to 21, with one Senator not voting. Although we have never held that the amendment-rejection theory is a completely determinative method of ascertaining legislative intent, we have indicated that such action strengthens the conclusion that the Legislature did not intend to achieve the results that the amendment would have achieved, if adopted. In *Bosley v. Dorsey*, 191 Md. 229, 240, 60 A. 2d 691 (1948), for example, we indicated that the rejection by the Senate of a bill that would have authorized the People's Counsel to appeal decisions of the Public Service Commission ". . . strengthens the conclusion that the Legislature has not intended that the people's Counsel shall appeal from orders of the Commission." See also *Madden v. Brotherhood and Union of Tr. Employees*, 147 F. 2d 439 (4th Cir.) (1945); *Safeway Stores v. Bowles*, 145 F. 2d 836 (Emer. Ct. App.) *cert. denied* 324 U. S. 847, 65 S. Ct. 683, 89 L. Ed 1408 (1945); *Nebraska v. Chicago* & N. W. Ry. Co., 147 Neb. 970, 25 N.W.2d 824 (1947).

Our conclusion in this instance is strongly buttressed by the fact that in 1973, when Senate Bill 369 was rejected, the Legislature must surely have been aware of the Attorney General's opinion on this question, as "[i]t cannot be supposed that the published opinion of the Attorney General . . . . in respect of a . . . . practice in which so many citizens have an interest, can have escaped the notice of the Legislature." *Crest Investment v. Cohen*, 245 Md. 639, 648, 227 A. 2d 8 (1967) and *Drug & Chemical Co. v. Claypoole*, 165 Md. 250, 166 A. 742 (1933). See also *Macke Co. v. St. Dept. of Assess. & T.*, 264 Md. 121, 132-133, 285 A. 2d 593 (1972),

applying the same rule of statutory construction when a judicial interpretation of legislative intent was involved.

The second factor leading us to our decision that the "Prevailing Wage Law" has general application to the State School Construction Program is the construction placed upon the two statutes by the officials charged with the administration of these statutes. As we have noted above, the Interagency Committee and the Board of Public Works obviously found the "Prevailing Wage Law" applicable to the School Construction Program, for they rejected the Demory bid and accepted the Gardiner bid. We have frequently said that the construction given to statutes immediately after their enactment, by officials charged with the administration of those laws, "should not be disregarded except for the strongest and most cogent reasons." *Comptroller v. Rockhill, Inc.*, 205 Md. 226, 233, 107 A. 2d 93 (1954); *Nutwell v. Sup. of Elections*, 205 Md. 338, 108 A. 2d 149 (1954); *Smith v. Higinbothom*, 187 Md. 115, 48 A. 2d 754 (1946).

Appellants argue further that by virtue of the competitive bid provisions of Article 77, Section 123 of the Maryland Code, the "Prevailing Wage Law" cannot be held applicable to public school construction. The Court of Special Appeals found that that argument had no merit and said:

> "Ultimately, Demory argues that the competitive bid provisions of Md. Ann. Code Art. 77, [Section] 123 are in conflict with Md. Ann. Code Art. 100, [Sections] 96-107 and it concludes 'that the prevailing wage law is inapplicable to public school construction.' Md. Ann. Code Art. 77, [Section] 123 provides in pertinent part:
>
> > 'Where the cost of any school build- ing, improvement, supplies, or equipment of any sort exceeds the sum of five thou- sand dollars, the board of education in each county shall advertise for bids ... and the contract for any such school building, improvements, supplies, or other equipment

shall be *awarded to the lowest responsible bidder* . . . and any contract entered into or purchase made in. violation of the provisions of this section shall be null and void . . . .' (Emphasis supplied.)

"The Court of Appeals in *Board of Education v. Allender*, 206 Md. 466, 112 A. 2d 455 (1955), held the clause 'lowest responsible bidder' to be mandatory. The purpose, of course, of [Section] 123 is to secure unrestricted competitive bidding thereby providing the lowest cost to the taxpayer. *Board of Education v. Allender, supra.*

"Reduced to simplicity, Demory's argument runs along the following line: [Section] 123 requires the award of a bid on a school construction job to be let to the 'lowest responsible bidder.' Demory made the lowest bid. Demory is responsible. The payment of prevailing wage rate has nothing to do with responsibility. *Ergo*, the bid should be awarded to Demory. Demory's reasoning, however, presupposes that Md. Ann. Code Art. 77, [Section] 123, stands alone and is to be read without regard to other legislative enactments. The argument ignores the adoption of the prevailing wage law. In our view, the prevailing wage law must be read together with the competitive bid statute. Both statutes, i.e., Md. Ann. Code Art. 77, [Section] 123 and Md. Ann. Code Art. 100, [Sections] 96-107, are *in pari materia.*

"In *May v. Warnick*, 227 Md. 77, 175 A. 2d 413 (1961), the Court of Appeals stated, at 83:

'It is well-established law that in construing legislative enactments, all statutes relating to the same subject matter are to be considered and harmonized as far as possible. And this rule applies when the statutes were passed at different dates, separated by long or short intervals. The

statutes are to be compared and brought into full accord if possible, but if they are insusceptible of a construction which will permit all their provisions to fall into complete agreement, they are to be made to operate together as far as possible, consistent with the evident intent of the latest enactment. *Balto. Credit Union v. Thorne*, 214 Md. 200, 134 A. 2d 84 (1957). Cf. *Reed v. President & Com'rs of the Town of North East*, 226 Md. 229, 172 A. 2d 536 (1961); *Height v. State*, 225 Md. 251, 170 A. 2d 212 (1961); *Phillips v. Comptroller*, 224 Md. 350, 167 A. 2d 913 [(1961)],'

Applying the principle of a harmonious reading to the two statutes here involved, as well as the rule that '[i]f two legislative acts can reasonably be construed together so as to give effect to both, such a construction is to be preferred', *Montgomery County v. Bigelow*, 196 Md. 413, 423, 77 A. 2d 164, 168 (1950), we hold that Md. Ann. Code Art. 77, [Section] 123 is to be read together with Md. Ann. Code Art. 100, [Sections] 96-107 so that the phrase 'lowest responsible bidder' embodied in Md. Ann. Code Art. 77, [Section] 123 means, in the light of Md. Ann. Code Art. 100, [Sections] 96-107, the lowest responsible bidder utilizing the prevailing wage rate." *Demory Brothers v. Bd. of Pub. Works, supra,* pp. 476-478.

We adopt that portion of that Opinion of Judge Gilbert for the Court of Special Appeals.

Having found that the State School Construction Program generally is within the provisions of the "Prevailing Wage Law," we now turn our attention to Appellants' "fallback" argument, that this particular contract is taken outside of the ambit of that law by reason of there having been funds other than State funds used for the construction of the school. This argument is based on the language of Section 96

(d) (1) of Article 100 that the "Prevailing Wage Law" is applicable to those contracts entered into by a public body "when State public funds are the *only* funds used for the construction of a particular public works" (Emphasis supplied).

Appellants argue that county funds were used for three purposes on this project: for the acquisition of the land on which the school was to be built, for the salaries of the building inspectors who devoted their time to this project, and for the issuance of the building permits for the project.

We note at the outset that each of these three items is specifically excluded from State payment by the Rules and Regulations adopted by the Board of Public Works for the administration of the School Construction Program. Regulation No. 7 provides that "[n]o payments shall be made to any local board for . . . . providing inspection of construction projects." That regulation further provides that "[t]he State shall not fund the costs of site purchase." Regulation No. 15 stipulates "[t]he State shall not pay any fees for local building permits and . . . . [l]ocal boards shall be required to furnish adequate inspection of all construction projects." Standing alone these exclusions would probably be sufficient to nullify Appellants' arguments, but even without the exclusions we find nothing in these three expenditures that would take this contract out of the provisions of the "Prevailing Wage Law." That law deals with State contracts for the construction of public works. The cost of land acquisition is not a part of this contract, and site acquisition is not included in the definition of "Construction" or of "Public Works" in the "Prevailing Wage Law." Article 100, Section 96 (b) & (c) of the Maryland Code. Appellants offer little, if any, support for their argument that the cost of land acquisition should be considered as part of the construction costs, and we believe that no support for that proposition can be found. Construction costs, in the accepted sense, are the costs of the improvements or structures located on a site, and we believe that the Court of Special Appeals was correct in holding that "[l]and acquisition is not to be considered a cost of

'construction of public works' within the meaning of Md. Ann. Code Art. 100 [Section] 96." *Demory Brothers v. Bd. of Pub. Works,* 20 Md. App. 467, at 474-475.

Similarly, we believe the Court of Special Appeals was correct in holding that the salaries paid the building inspectors are not part of the construction costs, and, therefore, do not operate to remove this project from the provisions of the "Prevailing Wage Law." We are not advised whether these inspectors devoted all of their working hours to the inspection of this project, or whether they were employed specifically for this purpose. In any case, it is our view that the wages of those inspectors are not part of the construction costs any more than would be the salaries of county police personnel who safeguarded the premises during construction. These inspectors, like police officers, are employees paid from tax monies, performing services of general benefit to the county by assuring compliance with county laws.

Next, we turn our attention to the question of whether the monies paid for the building permits are part of the construction costs and, therefore, operate to make the "Prevailing Wage Law" inoperable on this project.

According to the agreed Stipulation of Facts, approximately $900.00 in fees was charged by Prince George's County for building permits on this project. The record does not reveal whether these fees were paid by the contractor, subject to reimbursement by the Board of Education, or paid by that Board itself. In either case, the effect on county revenues was precisely the same; the payment for the cost of the building permits, however made, was not a payment at all. It was merely a transfer of county monies from one county pocket to another, an exercise in bookkeeping which simply cannot operate to remove this project from the provisions of the "Prevailing Wage Law."

Although the Court of Special Appeals correctly held that the monies paid for the permits did not act to exclude the project from the "Prevailing Wage Law", we are troubled by its having reached that decision by the application of the doctrine of *de minimis non curat lex.* The Court of Special

Appeals found that the sum of $900.00 paid for the permits was less than one-tenth of one per cent of the total construction contract and was, therefore, such an infinitesimal contribution and a sum so trifling as to be unworthy of consideration. Since we have found that no real cost was incurred by the payment of these permit fees, it is not necessary that we decide whether the *de minimis* doctrine is applicable in this case. We point out, however, that the legislative history of the "Prevailing Wage Law" could make it extremely difficult to apply that law to a project in which any funds other than State funds were utilized. It must be remembered that when the law was enacted in 1969, its provisions were excluded from projects funded *"primarily from sources other than the State."* Chapter 558, Laws of Maryland, 1969. The 1971 amendment, however, deleted that provision and specifically provided that the law should be applicable "when state public funds are the *only* funds used for the construction of a particular public works." Chapter 220, Laws of Maryland, 1971. We assume, without deciding, that when the Legislature said "only," it meant "only."

In sum, we believe that the Court of Special Appeals correctly concluded that projects funded by the State of Maryland under the State School Construction Program were intended by the General Assembly to be included among the contracts to which the "Prevailing Wage Law" shall be applicable, and we find nothing in the contract before us that would operate to exclude it from the provisions of that law.

> *Judgment of the Court of Special Appeals affirmed.*
> *Costs to be paid by the appellants.*