THE HOWARD RESEARCH AND DEVELOPMENT CORPORATION ET AL. *v.* HOWARD COUNTY, MARYLAND ET AL.

[No. 1670, September Term, 1979.]

*Decided September 8, 1980.*

The cause was argued before MOORE and COUCH, JJ., and JACOB S. LEVIN, Associate Judge of the Seventh Judicial Circuit, specially assigned.

*George P. Barker* and *Richard G. McCauley,* with whom were *Frank, Bernstein, Conaway & Goldman* on the brief, for appellant Howard Research and Development Corporation. *Thomas E. Lloyd,* with whom were *Lloyd, Kane & Wieder* on the brief, for appellant BP Oil, Inc.

*Timothy E. Welsh, County Solicitor for Howard County,* with whom were *Pamela B. Sorota, Assistant County Solicitor for Howard County,* and *Paul T. Johnson, Assistant County Solicitor for Howard County,* on the brief, for appellee Howard County, Maryland. *Barbara Gold* on the brief for appellee Concerned Citizens for the Columbia Concept.

COUCH, J., delivered the opinion of the Court.

The Board of County Commissioners of Howard County, in May, 1965, amended the Howard County Zoning Regulations by adopting Section 17 which provided for the creation, organization and regulation of a floating zone known as a New Town (NT) District.[1] This new section of the zoning regulations provided that the beneficial owner of any tract of land in Howard County meeting the requirements of Section 17.012 [2] (NT District must contain total area of at least 2,500 contiguous acres) may petition the Board of County Commissioners to designate the property an NT District. A Preliminary Development Plan [3] (PDP) must accompany the petition.

Howard Research and Development Corporation (HRD)

---

1. The unique legal characteristics of New Town Districts and Planned Unit Districts were discussed by scholars before they were addressed by the courts. In determining that a planning commission was better qualified than a board of adjustment to handle large scale planning decisions, the Supreme Court of Pennsylvania relied on the expertise of Professor Krasnowiecki of the University of Pennsylvania. Cheney v. Village 2 at New Hope, Inc., 429 Pa. 626, 241 A.2d 81 (1968). *See* Krasnowiecki, *Technical Bulletin 52, Urban Land Institute, 38* (1965), and Krasnowiecki, *Planned Unit Development: A Challenge to Established Theory and Practice of Land Use Control,* 114 U. Pa. L. Rev. 47 (1965).

In *Cheney* the Pennsylvania Court upheld the planning commission's approval of a planned self-contained community within a zoning district. The Court dismissed arguments that the community was the product of a special exception, finding instead the planned development complied with the zoning laws.

The Court of Appeals has compared *Cheney* with its own support of delegated authority for comprehensive zoning. Montgomery County v. Woodward and Lothrop, 280 Md. 686, 718, 376 A.2d 483 (1977). *See also* Reno, *Non-Euclidean Zoning: The Use of The Floating Zone,* 23 Md. L. Rev. 105 (1963), and Mosher, *The Floating Zone: Legal Status and Application to Gasoline Stations,* 1 Tulsa L. Rev. 149 (1964).

2. "§ 17.012 — No NT District shall be created except by the procedure set forth in Section 17.02 hereof. Each NT District must contain a total area of at least 2,500 contiguous acres. Lands which are divided by streets, roads, ways, highways, transmission pipes, lines or conduits, or rights of way (in fee or by easement) owned by third parties shall be deemed to be contiguous for purposes of this Section 17. No NT District shall be established except upon land the beneficial title to which is in the person, firm or corporation executing the petition referred to in Section 17.021 thereof. The tenant under a lease having a term of not less than seventy-five years shall be deemed to be the holder of the beneficial title to the land covered by the lease for the purpose of this Section 17."

3. A PDP is defined in § 17.021c of the Zoning Regulations as a "generalized drawing or series of drawings of the proposed New Town, with appropriate text materials, setting forth: (1) the major planning assumptions and objections. . . ."

submitted such a petition accompanied by a PDP for the placement of approximately 13,600 acres of land in what was to be known as the Columbia New Town District (Columbia). The petition and the PDP for Columbia were approved by the Board of County Commissioners in August of 1965. Following the approval of the PDP, HRD had the choice, under the zoning regulations, of either developing the entire NT District or developing the NT District in separate geographical segments. HRD chose the latter, more manageable course. The process of developing phases of the PDP involves submission of a Final Development Plan (FDP) for each geographical segment (phase) to the Planning Commission for its review and approval.

In November, 1968, a county charter was adopted by the citizens of Howard County. In that charter, the Planning Board was designated to succeed the Planning Commission with regard to matters involving New Town Districts. A Zoning Board was also created and, pursuant to the Zoning Enabling Act, Howard County Code §§ 16.200-210, the Zoning Board, in October, 1977, adopted the 1977 Zoning Regulations. § 119 of the new regulations, governing NT Districts and particularly Columbia, is virtually identical to § 17 of the 1961 Zoning Regulations.

The specific controversy in this case focuses upon Phase 36 of the Final Development Plan which was approved by the Planning Commission in April, 1968. Phase 36 involves approximately 139 acres of land located in a section of the Oakland Ridge Industrial Park in the Columbia New Town District. Approximately 57 acres (collectively, the "Base Parcel") of Phase 36 were designated for development and given the land-use designation of "Employment Center — Industrial Area." Having obtained the approval of the Planning Commission, the FDP Phase 36 map and accompanying "criteria" [4] were recorded among the Land Records of Howard County.

The problem presented here deals with the specific

---

4. "Criteria" is defined in the present Howard County Zoning Regulations as "New Town text material accompanying map of Final Development Plan." § 104 A. 25 (1977).

implementation of the Final Development Plan — Phase 36. The FDP Phase 36 criteria provides as follows:

"F. Permitted Uses — Section 17.031 D (of 1977 Zoning Regulations)

\* \* \*

B. Commercial uses ancillary to, or compatible with, permitted industrial uses are permitted including, but not limited to, all of the following:

\* \* \*

d. Gasoline service station."

Under Paragraph 6.A. of the FDP criteria — Phase 36, "All structures constructed upon lots included within this phase shall be constructed in accordance with a site development plan approved by the Howard County Planning Commission." In accordance with the Phase 36 criteria, BP Oil, Inc. (BP), appellant and contract purchaser of approximately 1.297 acres, designated as lot 79 in Oakland Ridge Industrial Park, petitioned the Planning Board for the approval of a site development plan which proposed the installation of a gasoline service station on the lot. As noted previously, a gasoline service station is categorized as a permitted use by the Phase 36 criteria. No other gas station had been built on the Phase 36 parcel and BP apparently believed that such a use was permitted as of right and that the imprimatur of the Planning Board, without the requirement of a formal public hearing, was all that was necessary to proceed with development of the lot. The Planning Board felt otherwise. The Howard County Planning Board, pursuant to § 119 C.15 of the 1977 Zoning Regulations [5] and the Board's own Final Development Plan Criteria Policy,[6] concluded that a determination "in the

_____

5. § 119 C.15 provides as follows:

The Planning Board shall have jurisdiction to make decisions and determinations with respect to all matters which may be deemed to be _in the nature of variances and special exceptions._ [Emphasis added.]

6. That policy, adopted on January 1, 1979, states in pertinent part:

"Specific uses permitted under the FDP Phase Criteria

nature of" a special exception decision had to be made by the Planning Board relative to the proposed location of BP's gasoline service station, because the use had not been assigned to a specified parcel under the recorded FDP Phase 36 criteria.

The Planning Board conducted the proceedings as upon a petition for special exception which requires a public hearing, notice, presentation of evidence and the issuance of a decision and order. The previously referenced policy of the Board required the Board to apply the standards of § 122 F.16 of the Zoning Regulations, which provides for special exceptions for gasoline stations, to BP's application. The Board held a public hearing on the petition on July 31, August 23, and September 20, 1978 at which appellees, the Concerned Citizens for the Columbia Concept (Protestants) appeared to protest the placement of the gas station on property bordering their residential area. Using the standards delineated in § 122 F.16 for the grant of a special exception, the Planning Board granted BP's application.

The protestants, uncertain of the route an appeal must take from the Planning Board, filed appeals to both the Circuit Court for Howard County and the Board of Appeals of Howard County. These proceedings are now pending and, although they precipitated the instant case, they are not directly involved here. The protestants' appeals raised various original and appellate jurisdictional questions involving the administration of the NT District which cast obstacles in the path of the commencement of construction of the gas station. Accordingly, appellant BP filed the present

---

recorded prior to October 3, 1977, in the Land Records of Howard County, whether listed by name or by referenced section of the Zoning Regulations, which are only permitted as a Special Exception under the 1961 Zoning Regulations of Howard County outside of the New Town District, shall require Planning Board approval for the location of said uses except where a singular use has been assigned to a specific parcel under a recorded FDP Phase Criteria. In these matters the Planning Board of Howard County may refer to the specific considerations set forth under Section 19 of the Howard County Zoning Regulations (adopted May 16, 1961) 'Special Exceptions,' for the evaluation and approval of applicable uses."

declaratory judgment action in the Circuit Court for Howard County. Appellant HRD, the developer of the Columbia NT District, intervened.

BP's petition for a declaratory judgment requested the Circuit Court to declare (1) that the Board of Appeals of Howard County has no jurisdiction or authority to entertain an appeal from a decision of the Planning Board granting BP permission to erect a gasoline station in a NT District, (2) that the Planning Board has no authority to grant special exceptions under the zoning regulations applicable to the NT District, (3) that the action of the Planning Board in approving BP's site development plan was valid, and (4) in the alternative, if it were found that the Planning Board had the authority to grant a permit for the service station as a special exception in the NT District, that its action in approving the site development plan and granting a special exception was valid. A "counterclaim" was filed by the "Concerned Citizens for the Columbia Concept" and several of its individual members in which they requested several things, the most important of which was that the Circuit Court declare that (1) the Planning Board's approval was illegal, and (2) that they have a right to appeal to the Board of Appeals from the decision of the Planning Board.

After a hearing on the various issues the circuit court issued, in November, 1979, its Memorandum Opinion and Decree and declared the following:

"(1) That § 119 C.15. of the Zoning Regulations of Howard County is invalid, and therefore the Planning Board [note 5, *supra*] of Howard County had no authority to grant to the Petitioner, BP Oil, Inc. a special exception for a gasoline service station on Lot 79 in Oakland Ridge Industrial Park, as shown on Phase 36 of the Final Development Plan for the New Town of Columbia, recorded in Plat Book 14, Folio 64.

(2) That since the Planning Board of Howard County had no authority to grant said special exception, no appeal to the Board of Appeals of

Howard County lies from the decision and order of the Planning Board purporting to grant said special exception in Planning Board Case No. 123.

(3) That original jurisdiction to permit said special exception lies in the Board of Appeals of Howard County.

(4) That the gasoline service station for which a permit was sought by the Petitioner, BP Oil, Inc., falls within the definition of an Automobile Gasoline Service Station as set out in § 104 A.11. of the Zoning Regulations of Howard County, . . ."

HRD petitioned for a rehearing, which was granted. A second Memorandum and Order denying HRD's motion to revise the earlier decree was issued in February, 1980. The February, 1980 Order reinstated the November, 1979 Order. Thus our review shall center upon the November, 1979 Memorandum and Decree.

Appellants, HRD and BP, raise the following issues with respect to the circuit court's disposition of the petition for declaratory judgment:

"I. Under the Howard County Zoning Regulations, are there uses in New Town Districts which are to be treated as Special Exception uses requiring the approval of the Howard County Board of Appeals before they may be installed in a New Town District?

II. Does the Howard County Board of Appeals have the authority and jurisdiction to hear appeals from decisions of the Howard County Planning Board involving the final development plan process in a New Town District?

III. Does BP Oil, Inc. have a 'vested right' to construct a gasoline service station on the property?"

I

As shall be seen the question of whether there are special

exceptions in a New Town zoning district is determinative of the jurisdictional issue raised in appellants' second argument. On the one hand, if special exceptions are contemplated by the NT zoning regulations, then original jurisdiction rests with the Howard County Board of Appeals, Howard County Code § 16.301 (1977). If there are no special exceptions then original jurisdiction for the approval of BP's site development plan rests with the Planning Board. The course of appeal from the Planning Board also presents a problem but we will chart it when we arrive at that point.

Our answer to appellants' first question is quite simple. There are no special exceptions in a New Town zoning district as established in the 1961 and 1977 versions of the Howard County Zoning Regulations.

Our conclusion that there are no special exceptions [7] in a NT District derives from a reading of the New Town zoning regulations in their entirety, *Pumphrey v. County Comm'rs. of Anne Arundel County,* 212 Md. 536, 130 A.2d 297 (1957), which is the better source for divining legislative intent as opposed to reference to any one part of the zoning regulations. *See Mazor v. State Department of Correction,* 279 Md. 355, 369 A.2d 82 (1977). While we are mindful of the admonishment that no section of a statute should be rendered surplusage, we do not believe that § 119 C.15, having reference to all "matters which may be deemed to be in the nature of variances and special exceptions," plays a part in the submission to the Planning Board for their approval of BP's site development plan.

Preliminarily we note that FDP Phase 36 endured rigorous oversight before finding its way into the land records of Howard County. The proposed use for the land was first submitted under the 1961 regulations as a preliminary development plan to the Planning Commission and then to the County Commissioners who rezoned the area to a New Town District. The PDP under the provisions of § 17.021 c (1961) was required to show the general location of both residential and employment uses. Under § 17.023 the

---

7. All references shall be to the 1977 zoning regulations unless otherwise specified.

County Commissioners were required to hold a public hearing on the PDP and examine the PDP in detail. Following the approval of the PDP all prior existing zoning controls over property within the NT District which were inconsistent with the PDP ceased. Howard County Zoning Regulations, § 119 B.6.c. (1977). The PDP then became the controlling blueprint for the NT District but actual development could not begin until the FDP gained approval from the Planning Commission. Chief among the Planning Commission's considerations in the FDP approval process was the "impact of the proposed commercial and industrial uses on the residential uses within the NT District or adjacent thereto." § 17.034 D (1961). Nowhere in this development process for a NT District is there mentioned a special exception. In fact, the major thrust of the New Town regulations seems to be to achieve a compatible mix of uses with a good deal of flexibility built into the development scheme which is overseen by both the Planning Commission (presently the Planning Board) and the County Commissioners (who have been replaced in the NT scheme by the Zoning Board).

Section 119 A.10 of the 1977 Regulations provides:

> "Anything in other sections of these Regulations to the contrary notwithstanding, there shall be no restrictions upon the use of, or on the erection of buildings and structures on, land within an NT District other than such as are provided in the various subsections of this Section or in such other Sections of these Regulations as are expressly stated to be applicable by the various provisions of this Section."

If a gasoline service station is a special exception in an NT District it clearly must be found in the NT regulations or by express reference to other sections of the Howard County Zoning Regulations. Section 122 which governs special exceptions, and specifically gasoline service stations as special exceptions, is mentioned once in the NT regulations:

> "All intended uses which by Section 122 of these

Regulations are permitted, with specific approval, only in residential districts, or in some residential districts and some non-residential districts, may be included in the Final Development Plan, either in the residential areas or Employment Centers shown on the Preliminary Development Plan. All intended uses which by Section 122 of these Regulations are permitted, with specific approval, only in non-residential districts, shall be included in areas marked Employment Centers on the Preliminary Development Plan."

§ 119 B.2, Howard County Zoning Regulations (1977). This section does not import the entirety of § 122 into the NT zoning regulations. It merely provides that those uses which are listed as special exceptions in § 122 and permitted in either residential or non-residential areas under the regulations applicable to other than NT Districts shall be included either in the residential or Employment Centers shown on the PDP. A gasoline service station is one of those uses to which § 119 B.2. refers and was appropriately placed by the PDP in an employment center which is now FDP Phase 36. From these regulations it is evident that those uses which are considered special exceptions meriting strict control by the provisions of § 122 have been afforded the same modicum of controls by virtue of the NT development process which requires careful oversight for all uses which may be placed in the NT District.

Of course, the real culprit which has created vast amounts of confusion in the administration of and regulation of the Columbia New Town District by the Planning Board is § 119 C.15 which states that "The Planning Board shall have jurisdiction to make decisions and determinations with respect to all matters which may be deemed to be in the nature of variances and special exceptions." We have searched the NT regulations for some inkling as to what the phrase "in the nature of special exceptions and variances" could possibly refer and have concluded that the phrase does not require the interpretation that the trial court placed

upon it. The trial court arrived at its conclusion that BP's application amounted to an application for a special exception by the following reasoning:

"Section 119A. 10. states, in part, that: 'Anything in other sections of these Regulations to the contrary notwithstanding, there shall be no restrictions upon the use of, or on the erection of buildings and structures on, land within a NT District other than such as are provided in the various subsections of this Section or in such other Sections of these Regulations as are expressly stated to be applicable by the various provisions of this section.' Section 119 A.8. provides that: 'Subject to the more restrictive provisions of § 119Cld relating to specific uses, all provisions of these Regulations relating in B-1, B-2, SC and M-1 Districts (except those restrictions relating to minimum lot size, height limitations, parking requirements, front, side and rear yard areas, set back provisions and coverage requirements, and to controls afforded by the Final Development Plan set forth herein being substituted therefor) shall apply to those areas in the NT District designated on the approved Final Development Plan for uses corresponding to those permitted in the aforesaid districts.'

The parenthetical portion of the last regulation quoted is grammatically incomprehensible but any interpretation of it, by recourse to § 17.017 of the prior zoning regulations or otherwise, would not seem to affect the conclusion that uses permitted in the B-1, B-2 and M-1 Districts are subject to the restrictions elsewhere in the Regulations applied to them, except as to minimum lot size, etc. Section 122 F. of the Regulations provides that 'The Board of Appeals may grant Special Exception uses in the specified [underscoring supplied] districts in accordance with the following minimum criteria: ... . . . . . 16. Gasoline Service Stations: 'A Special

Exception may be granted in the B-2, S-C, M-1, M-2 and ID Districts for gasoline service stations . . . . .'. This Court does not construe the provisions of § 119 B.2. to mean that, since uses permitted with specific approval by Section 122 are to be *included* in specified areas on the Preliminary Development Plan, such uses, by virtue of being included, are thereby permitted as a matter of right. The language used indicates where such uses are to be located, just as Section 122 indicates where such uses are to be located. The purpose of the Section appears to be to supplement or amplify the provisions of § 119 A.9, which provides that the New Town District must provide a certain percentage of B-1, B-2, SC and M-1 uses. The uses permitted with specific approval in those districts are not listed under the sections of the regulations defining those districts and specifying the uses permitted therein as a matter of right. Absent the provisions of § 119 B.2, there could be some question as to whether uses permitted with specific approval under § 122 are allowed in the New Town District. The interpretation placed on the language in § 119 B.2. appears to be supported by the language of § 119 C.15 and 16.

Since the provisions of § 122 F.16. relate to B-2, S-C and M-1 Districts, it seems reasonable to conclude that a gasoline service station in an Employment Center in an NT District must be treated as a special exception. By the terms of § 122F, however, the Board of Appeals can grant a special exception only in the districts specified. Nowhere in § 122 is the NT District specified. It should be pointed out that the confusion is confounded further by the fact that the Board of Appeals is vested with the authority to permit, as special exceptions, certain uses in *any* district, viz: cemeteries and mausoleums, country clubs and golf courses, day care centers, farm commercial uses, public utility uses, and others.

Section 119 C.15. of the Zoning Regulations provides that 'The Planning Board shall have jurisdiction to make decisions and determinations with respect to all matters which <u>may be deemed to be in the nature of</u> variances and special exceptions.' [Underscoring supplied] It is not easy to understand just what the quoted words mean. The writer is reluctant to construe the provisions to mean that the Planning Board is given the discretion to determine what it thinks or 'deems' is a special exception. However, § 119 C. 16, added as an amendment in 1978, reads in part: 'Any petition for a land use in a New Town District permitted under Section 122 (F) of the Zoning Regulations in any F.D.P. (Final Development Plan) which has been denied by the Planning Board . . . . . . .'. This seems to indicate that the Planning Board, in the New Town District, is vested with the authority to entertain applications for all the applicable uses designated as special exceptions in § 122 (F) although, as it has been observed, many of the special exceptions therein specified are permitted in any district with the approval of the Board of Appeals."

We believe the trial court erred in viewing the reference to M-1 Districts as requiring the conclusion that the present application be treated as a special exception. Once again, this section refers to the kinds of uses and their restrictions, not the method of their approval. The NT regulations replace § 122 insofar as that section provides certain protections before a specific use may be made of the area within the zone. BP's site development plan presented a proposed use for the land which had been considered and approved by both the Planning Commission and the County Commissioners. To require the injection of the Board of Appeals, which has original jurisdiction over special exceptions, into this already lengthy process would serve the purpose of only rehashing the result which other bodies have reached after thorough consideration. Additionally, as previously noted, § 119 B.2. specifically directs the

placement of those uses considered to be special exceptions in employment centers without resort to the procedural requirements of § 122.

The most important consideration, however, is the fact that the FDP Phase 36 criteria which has been promulgated according to the NT regulations and now has the full force and effect of a zoning regulation states that a gasoline service station is a permitted use for FDP Phase 36. The criteria must be considered on the same footing as all other NT regulations. Obviously, one cannot transform a permitted use sanctioned as a zoning regulation into a special exception simply by invoking the phrase "in the nature of a special exception". We must construe § 119 C.15 so that it avoids an illogical result. The very use of the words "in the nature of" indicates that the NT regulations do not contemplate the actual presence of a special exception but merely seek to resolve any potential jurisdictional conflict between the Planning Board and the Board of Appeals where the former considers a site development plan that proposes a use which would fall into the category and thus under the jurisdiction of the Board of Appeals were it not considered under the auspices of the NT regulations. Accordingly, we conclude that there are no special exceptions under the New Town zoning regulations. A reading of the zoning regulations in their entirety can only lead one to this conclusion.

## II

Having negatively answered the question of whether there are special exceptions in a NT District, our remaining task becomes far easier. Appellants HRD and BP argue that the Howard County Board of Appeals has no authority and jurisdiction to hear appeals from decisions of the Howard County Planning Board involving the Final Development process. We note initially that the Howard County Board of Appeals has no original jurisdiction over BP's petition since no special exception is involved. Section 122 F.16 of the 1977 Zoning Regulations, which gives the authority to the Board of Appeals to permit a gasoline station as a special exception,

also limits the exercise of that authority to B-2, S-C, M-1, M-2 and ID Districts. No mention is made of an NT District in the grant of jurisdiction to the Board of Appeals. The Planning Board, however, clearly does have what may be termed original jurisdiction over the approval of BP's site development plan, both by virtue of § 119 C.3.d [8] and the FDP Phase 36 criteria. Paragraph 6.A. of the FDP Phase 36 states that "All structures constructed upon lots included within this phase shall be constructed in accordance with a site development plan approved by the Howard County Planning Commission." Accordingly, we see no difficulty in leaving the approval of BP's site development plan in the hands of the Planning Board.

With regard to the appropriate course of appeal from the Planning Board's action concerning BP's site development plan, we agree with appellee Howard County's position that the Howard County Board of Appeals has the authority and jurisdiction to hear appeals from the Howard County Planning Board involving the final development process in a New Town District.

Howard County has been a "charter" county since 1968 and possesses the powers set forth in Article XI-A, § 2 of the Maryland Constitution and the Express Powers Act, Md. Ann. Code Art. 25A, § 5 (U) (1973 Repl. Vol., 1979 Supp.). Article 25A, § 5 (U) empowers charter counties to enact local laws establishing a county board of appeals. That section provides as follows:

> "(1) for the establishment of a county board of appeals whose members shall be appointed by the county council; (2) for the number, qualifications, terms, and compensation of the members; (3) for the adoption by the board of rules of practice governing

---

**8.** § 119 C.3.d provides: "At the time of the approval of a Final Development Plan, the Planning Board may provide for the subsequent approval by it of a site development plan pertaining to the property which is the subject matter of such Final Development Plan. Such subsequent approval shall not be a condition precedent to the approval and recordation of the Final Development Plan with respect to which a site development plan is to be submitted, but shall be in addition to any administrative approvals required by the Subdivision and Land Development Regulations."

its proceedings; and (4) for the decision by the board on petition by any interested person and after notice and opportunity for hearing and on the basis of the record before the board, of such of the following matters arising (either originally or on review of the action of an administrative officer or agency) under any law, ordinance, or regulation of, or subject to amendment or repeal by, the county council, as shall be specified from time to time by such local laws enacted under this subsection: An application for a zoning variation or exception or amendment of a zoning ordinance map; the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission or of any adjudicatory order; and the assessment of any special benefit tax: Provided, that upon any decision by a county board of appeals it shall file an opinion which shall include a statement of the facts found and the grounds for its decision. Any person aggrieved by the decision of the board and a party to the proceeding before it may appeal to the circuit court for the county which shall have power to affirm the decision of the board, or if such decision is not in accordance with law, to modify or reverse such decision, with or without remanding the case for rehearing as justice may require. Any party to the proceeding in the circuit court aggrieved by the decision of the said court may appeal from such decision to the Court of Special Appeals. The review proceedings provided by this subsection shall be exclusive."

Howard County by Article V, Section 501 of its charter established the Howard County Board of Appeals and endowed it under § 501 (b) with the following authority:

"The Board of Appeals shall have and may exercise functions and powers relating to the hearing

and deciding, either originally or on appeal or review, such matters as are or may be set forth in Article 25A, Section 5, subparagraph U of the Annotated Code of Maryland, excluding those matters set forth in Section 406(b)13, hereof, including but not limited to, the following:

1. Appeals from orders relating to zoning.
2. Appeals from orders relating to licenses and permits.
3. Appeals from orders relating to building.
4. Appeals from executive, administrative and adjudicatory orders."

Section 501 (f) of the Charter provides for furthering legislation:

"(f) *Furthering legislation.* The Council shall have the power to enact by ordinance furthering legislation not inconsistent with the provisions of this Article to implement and define the powers and functions of the Board of Appeals as herein specified. To the extent permitted by State law, the Council shall also have the power, by legislative act, to prescribe other appeals to be heard by the Board of Appeals in addition to thos [sic] specified in this Article."

The furthering legislation enacted by the County Council is the vehicle for the appellants' argument that the Board of Appeals has no appellate jurisdiction over the Planning Board's actions with respect to site development approval in a New Town District. The Howard County Code, Subtitle 3, Section 16.301, enumerates the zoning powers of the Howard County Board of Appeals:

"The Howard County Board of Appeals shall have the following zoning powers:
(a) To authorize a variance or exception from the terms of the zoning regulations and the zoning districts. . . .

 (b) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by any administrative official in the application, interpretation or enforcement of this title or of any regulations adopted pursuant thereto.

 (c) To authorize temporary uses of land, . . . .

 (d) To authorize such uses as the zoning regulations may provide from time to time."

Appellants contend that this section, by the absence of specific mention of the Planning Board, or a general reference to it by inclusion of appeals from administrative boards in subsection (b), leaves a void in the appellate jurisdiction of the Board of Appeals which can be filled only by the County Council's enactment of a new code provision.

We do not believe that the County Code by its silence deprives the Howard County Board of the jurisdiction expressly granted to it under both Art. 25A, § 5U, and the Howard County Charter. Article 25A, § 5U clearly states that local laws may be enacted which provide for decision by the Board of Appeals on review of the action of an administrative agency on matters arising from the "issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, *approval,* exemption, waiver, certificate, registration, or other form of permission . . ." (emphasis supplied). Further, this method of appeal is made exclusive by Art. 25A, § 5U. *Klein v. Colonial Pipeline Co.,* 285 Md. 76, 82, 400 A.2d 768 (1979). In *Hope v. Baltimore County,* 44 Md. App. 481, 409 A.2d 753 (1980), a jurisdictional dispute between Art. 25A, § 5U, and a Baltimore County Code provision purportedly vesting appellate jurisdiction over the Baltimore County Planning Board in the Circuit Court was addressed by this Court. We said:

 "It is at once apparent that § 602 (d) of the county Charter provides that the Board of Appeals shall be the forum to hear and decide appeals 'from all other

administrative and adjudicatory orders as may . . . be provided' by § 5 (U) of art. 25A. And it is equally clear that § 5 (U) envisions the establishment of a county Board of Appeals with exclusive authority to hear appeals from actions of administrative officers or agencies taken under the laws, ordinances or regulations of the county, where such actions involve 'the issuance, renewal, denial . . . of any license, permit, *approval* . . . or other form of permission. . . .' " (Emphasis added.)

*Id.* at 485. We also stated in that case that the "proper forum to hear initial appeals from decisions of the Planning Board approving or disapproving a subdivision plat" is the Board of Appeals. *Id.* at 486. We believe the same rationale applies to appeals from the Howard County Planning Board's approval or disapproval of a site development plan submitted pursuant to any phase of a Final Development Plan. We also conclude that the Art. 25A, § 5U and the Howard County Charter unequivocally grant to the Howard County Board of Appeals the authority to entertain appeals of the sort presented in this case. The Howard County Charter's clear and unambiguous statement that "The Board of Appeals shall have and may exercise functions and powers relating to the hearing and deciding . . . on appeal or review, such matters as are . . . set forth in Article 25A, § 5U . . .," unequivocally grants jurisdiction to the Board of Appeals in this matter. The Howard County Code is not in conflict with the Charter — it is merely silent on the specific subject with which we are concerned. This Court does not understand that silence as prohibiting the exercise of appellate jurisdiction by the Board of Appeals in this case. Accordingly, we conclude that where the action of the Howard County Planning Board involves approval or disapproval of a site development plan filed pursuant to the New Town zoning regulations, an appeal will lie to the Howard County Board of Appeals.

As we have resolved the first issue and thus approved the final action but not the procedure of the Planning Board, it is not necessary to reach appellants' third issue relative to

518

whether BP has a vested right to construct a gasoline service station.

> *Decree reversed; case remanded for the passage of a decree consistent with this opinion.*
>
> *Costs to be paid one-half by appellants and one-half by appellees, Howard County and the Concerned Citizens for the Columbia Concept.*